UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| QUICKEN LOANS INC.,<br><br>*PLAINTIFF,*<br><br>v.<br><br>MATTHEW A. DICKASON,<br>MATTHEW A. DICKASON, P.C.,<br>d/b/a DICKASON LAW GROUP, AND<br>NORTH AMERICAN TITLE INSURANCE<br>COMPANY<br><br>*DEFENDANTS.* | CIVIL ACTION FILE<br>NO. |

## COMPLAINT FOR DAMAGES

Plaintiff,  QUICKEN LOANS INC. ("Quicken Loans") files and serves this Complaint for Damages against Defendants MATTHEW A. DICKASON ("Dickason"), MATTHEW A. DICKASON, P.C., d/b/a DICKASON LAW GROUP  (the "Dickason Firm,") and collectively with Dickason, the "Dickason Defendants"), and North American Title Insurance Company ("NATIC") showing the Court as follows:

## PARTIES

1.

Quicken Loans is a foreign for profit corporation with its principal place of business at 1050 Woodward Avenue, Detroit, Michigan, 48226.

2.

Dickason is a citizen and resident of DeKalb County, Georgia and may be served with process by delivering this Complaint and an original summons to Dickason at 1858 Davin Drive, Atlanta, DeKalb County, Georgia 30319.

3.

The Dickason Firm is a Georgia professional corporation and is a citizen of Georgia.  The Dickason Firm may be served with process through its registered agent for service, Matthew Dickason, at 1858 Davin Drive, Atlanta, DeKalb County, Georgia 30319.

4.

Dickason is an attorney currently licensed to practice law in the State of Georgia and is the principal attorney at the Dickason Firm.

5.

Defendant, NATIC, is a California insurance company authorized to transact business and currently transacting business in the State of Georgia.  NATIC may be served with process through its registered agent for service, CT Corporation System, at 289 Culver Street, Lawrenceville, Gwinnett County, Georgia 30046.

## JURISDICTION AND VENUE

6.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and complete diversity exists between the plaintiff, Quicken Loans, which, for the purposes of diversity, is a citizen of the State of Michigan, and the Dickason Defendants, which, for the purposes of diversity, are both citizens of the State of Georgia, and NATIC, which, for the purposes of diversity, is a citizen of the State of California.

7.

Venue is appropriate in this district pursuant to 28 U.S.C. § 1391, because the claims in this Complaint concern and arise from a certain loan closing and the misappropriation of funds from that loan closing, all of which occurred in at the Dickason Firm's office in Atlanta, Georgia.

NATIC, through multiple agents authorized to issue title policies, has offices and transacts business in Fulton County as of the filing of this Complaint. The contract on which NATIC is liable as alleged in this action was made and/or was to be performed in Fulton County, Georgia.

**Factual Background**

8.

In early 2019, Quicken Loans approved a loan (the "Loan") to be used by Sharese Shields (the "Borrower") to purchase the personal residence of Nam-in Paik and Jungmun Paik (the "Sellers"), which property is located at 1307 Forest Glade Terrace NW, Lawrenceville, GA 30043 (the "Property").

9.

Prior to approving the Loan, Quicken Loans had extended a mortgage loan to the Sellers and obtained a first-priority security interest in the Property to secure Sellers' mortgage loan.

10.

As part of the planned transaction with the Borrower, the Sellers' existing mortgage loan with Quicken Loans was to be paid off and Quicken Loans was to receive a first-priority security interest in the Property to secure the Borrower's Loan.

11.

After the terms of Borrower's Loan were agreed upon, the Dickason Firm was retained to serve as the closing attorney for the Loan.

12.

On March 20, 2019, the Dickason Firm, acting as an authorized agent for NATIC, issued a Commitment for Title Insurance on behalf of NATIC to Quicken Loans concerning the Property (the "NATIC Commitment"). A true and correct copy of the NATIC Commitment is attached hereto and incorporated herein by reference as **Exhibit "A."**

13.

On April 9, 2019, the Dickason Firm, acting as an authorized agent for NATIC, issued a Closing Protection Letter on behalf of NATIC to Quicken Loans (the "NATIC CPL").  In the NATIC CPL, the Dickason Firm obligated NATIC to indemnify Quicken Loans for certain losses that could arise in connection with the closing of the Loan (the "Closing").  A true and correct copy of the NATIC CPL is attached hereto and incorporated herein by reference as **Exhibit "B."**

14.

Upon information and belief, up to and through April 15, 2019, the Dickason Firm was authorized to issue title commitments, closing protection letters, title insurance policies and make other contractual commitments on behalf of NATIC pursuant to a written agency agreement.  On April 15, 2019, NATIC terminated its agency relationship with the Dickason Firm.

15.

On April 22, 2019, the Closing occurred.  At no time prior to the April 22, 2019 Closing did the Dickason Defendants or NATIC inform Quicken Loans that NATIC terminated its agency relationship with the Dickason Firm.

16.

During the Closing, the Borrower and Sellers executed, among other documents, a HUD-1 Settlement Statement (the "Settlement Statement").  A true and correct copy of the Settlement Statement is attached hereto and incorporated herein by reference as **Exhibit "C."**

17.

Upon information and belief, Amanda McGowan ("McGowan"), acted as the closing agent in connection with the Closing on behalf of the Dickason Firm, and subject to the supervision of the Dickason Firm.

18.

At the Closing, McGowan executed certain Closing/Disbursement Instructions.  A true and correct copy of the Closing/Disbursement Instructions is attached hereto and incorporated herein by reference as **Exhibit "D."**  Those Closing/Disbursement Instructions require, among other things, the Dickason Firm to provide a Lender's Title Policy to Quicken Loans.

19.

Following the Closing, Quicken Loans disbursed $266,400, less certain fees and charges (the "Loan Proceeds"), on behalf of the Borrower to the Dickason Firm, with such Loan Proceeds to be disbursed in accordance with the Closing/Disbursement Instructions and the Settlement Statement.

20.

The Dickason Firm was directed to disburse the funds in accordance with the Settlement Statement which was executed by the Borrower, Sellers, and McGowan on behalf of the Dickason Firm.  **See Ex. C.**

21.

Per the Settlement Statement, the Dickason Firm was required to disburse to the Sellers $138,401.94 in cash and disburse to Quicken Loans $136,093.74 to payoff the Sellers' existing loan ("Payoff Funds").  **See Exh. C.**

22.

Upon information and belief, following the Closing, Dickason, on behalf of the Dickason Firm, was responsible to disburse the Loan Proceeds.

23.

Following the Closing, the Dickason Defendants did not disburse to Quicken Loans the Payoff Funds designated in the Settlement Statement to pay off the Sellers' existing debt.

24.

Quicken Loans contacted McGowan to determine the status of the Payoff Funds, and she advised that the Dickason Firm bank records showed that the Payoff Funds were sent to another one of Dickason's business accounts, and not to Quicken Loans.

25.

Because the Dickason Defendants did not disburse to Quicken Loans the Payoff Funds, Sellers' Loan with Quicken Loans has not been paid and the lien existing on the Property from Sellers' Loan has not been extinguished.  Therefore, Quicken Loans does not hold a first priority security interest in the Property pursuant to the new loan it originated for the Borrower to purchase the Property.

26.

Upon information and belief, Dickason, the Dickason Firm, and/or someone acting on behalf of Dickason or the Dickason Firm, has misappropriated the Payoff Funds.

27.

As a result of the above actions, Quicken Loans submitted a claim to NATIC under the NATIC Commitment and the NATIC CPL ("NATIC Title Claim").

28.

In its response to the NATIC Title Claim, NATIC claimed that it terminated its agency relationship with the Dickason Firm on April 15, 2019 and that the NATIC CPL was not valid on the date of the Closing, April 22, 2019.  A true and correct copy of the NATIC's June 26, 2019 denial letter to Quicken Loans is attached hereto and incorporate herein by reference as **Exhibit "E."**

29.

As noted above, NATIC did not notify Quicken Loans that the NATIC Agency Agreement had been terminated until on or about June 26, 2019, when it sent Quicken Loans a letter denying Quicken Loans' claim under the NATIC CPL.  **See Exh. E.**

30.

On March 20, 2019, the Dickason Firm, acting as authorized agent for Investors Title Insurance Company ("Investors Title"), issued a commitment for title insurance on behalf of Investors Title to Quicken Loans concerning the Property (the "Investors Title Commitment").  A true and correct copy of the Investors Title Commitment is attached hereto as **Exhibit "F."**

31.

On April 17, 2019, the Dickason Firm, acting as authorized agent for Investors Title, issued a Closing Protection Letter on behalf of Investors Title to Quicken Loans (the "Investors Title CPL").  In the Investors Title CPL, the Dickason Firm obligated Investors Title to indemnify Quicken Loans for certain losses that could arise in connection with the Closing of the Loan.  A true and correct copy of the Investors Title CPL is attached hereto and incorporated herein by reference as **Exhibit "G."**

32.

In conjunction with the Loan Closing, the Dickason Firm, acting as authorized agent for Investors Title, issued a short form residential Lender's Policy on behalf of Investors Title to Quicken Loans ("Investors Title Lender's Policy").  A true and correct copy of the Investors Title Lender's Policy is attached hereto and incorporated herein by reference as **Exhibit "H."**

33.

Upon information and belief, up to and through April 23, 2019, the Dickason Firm was authorized to issue title commitments, closing protection letters, title insurance policies and make

other contractual commitments on behalf of Investors Title pursuant to a written agency agreement.  On April 23, 2019, Investors Title terminated its agency relationship with the Dickason Firm.

34.

The Dickason Firm did not provide Quicken Loans with the Investors Title CPL or the Investors Title Commitment prior to the April 22, 2019 Closing.

35.

Upon information and belief, the Dickason Firm did not disburse to Investors Title the amounts set forth in the Settlement Statement representing the premiums for the Investors Title Lender's Policy or the Owner's Title Insurance Policy (the "Investors Title Owner's Policy").

36.

Quicken Loans submitted a claim to Investors Title under the Investors Title CPL and Investors Title Lender's Policy.  ("Investors Title Title Claim").

37.

As of the date of filing this Complaint, Investors Title has not agreed to provide Quicken Loans with coverage under the Investors Title CPL or the Investors Title Lender's Policy.

38.

The Dickason Defendants' failure to account to Quicken Loans for the missing Payoff Funds, results from misappropriation of the Payoff Funds, commingling of the Payoff Funds with other funds (including the Dickason Defendants' personal funds), and/or theft of the Payoff Funds by one or more employees or attorneys acting on behalf of Dickason and/or the Dickason Law Firm.

39.

All conditions precedent necessary to the filing of this lawsuit have been complied with or otherwise waived.

## COUNT I – NEGLIGENT RETENTION/SUPERVISION/TRAINING AGAINST THE DICKASON FIRM

40.

Quicken Loans re-alleges and incorporates paragraphs 1 through 39 of its Complaint as if fully set forth herein.

41.

The Dickason Firm served as the closing law firm for Quicken Loans in connection with the Closing and, upon information and belief, Dickason, action on behalf of the Dickason Firm, misappropriated the Payoff Funds and committed other acts and omissions that damaged Quicken Loans.

42.

By virtue of the Dickason Firm serving as the closing law firm for Quicken Loans in connection with the Closing, it owed Quicken Loans a duty to retain, train, and supervise employees to complete the Closing, including ensuring the proper distribution of the Payoff Funds, the protection of Quicken Loans' first priority lien on the Property, and provision of proper title insurance in favor of Quicken Loans.  Likewise, the Dickason Firm owed Quicken Loans a duty to retain, train, and supervise employees to appropriately disburse client funds from the firm's various bank/trust accounts.

43.

Upon information and belief, prior to the Closing the Dickason Firm had received multiple complaints regarding Dickason's failure to properly complete other closings, including his failure

to payoff outstanding liens on other properties, failure to obtain proper title insurance for lenders, and failure to safeguard and appropriately distribute client funds from the Dickason Firm's various bank/trust accounts.

44.

Upon information and belief, the Dickason Firm failed to maintain adequate policies and procedures to ensure its employees proper disbursement of the Loan proceeds, including paying off existing liens, the procurement of valid title insurance and the protection of lenders' lien interests in connection with real estate closings where it served as the closing law firm, and to ensure the proper disbursement of client funds from Dickason Firm's various bank/trust accounts.

45.

The Dickason Firm knew, or should have known, that Dickason lacked the training to properly complete the Closing, properly disburse loan proceeds, obtain valid title insurance for Quicken Loans, ensure that Quicken Loans held a first position lien on the Property, and to ensure the proper disbursement of client funds from Dickason Firm's various bank/trust accounts.

46.

The Dickason Firm knew, or should have known, that Dickason was not adhering to the standard of care regarding the appropriate disbursement of the loan proceeds, the procurement of valid title insurance, protection of Quicken Loans' lien on the Property, and to ensure the proper disbursement of client funds from Dickason Firm's various bank/trust accounts.

47.

Even though the Dickason Firm knew or should have known of these complaints against Dickason, the Dickason Firm failed to use reasonable care in investigating complaints against Dickason, and did nothing to investigate, supervise, monitor, or train Dickason to ensure that he was properly completing closings, disbursing loan proceeds, procuring valid title insurance,

protecting lenders' lien interests in the properties, and to ensure that proper disbursement of client funds from Dickason Firm's various bank/trust accounts, including Quicken Loans' interests in the Loan Proceeds.

48.

The Dickason Firm's conduct was a breach of its duties to Quicken Loans.

49.

As a proximate result of the Dickason Firm's improper retention, supervision, and training of Dickason and Dickason's inability to properly complete the Closing as set forth above, Quicken Loans has suffered losses, costs, injuries, and damages in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law, by not having the other liens on the Property paid off so that it held a valid first position lien on the Property.  Further, as a proximate result of the Dickason Firm's improper retention, supervision, and training of Dickason, Quicken Loans may not have a valid Lender's Title Insurance Policy to cover the Closing.

50.

Given Dickason's propensities to not complete closings correctly, to not payoff existing liens on properties and ensure the protection of the lender's lien position, to not obtain valid Lender's title insurance in favor of lenders, and his misappropriation of client funds in the Dickason Firm's various bank/trust accounts, Quicken Loans' damages should have been foreseen by the Dickason Firm, and are the natural and probable consequence of the Dickason Firm's improper retention, supervision, and training of Dickason to complete the Closing and the associated distribution of the Loan Proceeds.

51.

The acts and omissions of the Dickson Firm as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

52.

The acts and omissions of the Dickason Firm demonstrate a reckless disregard for the consequences and entitle Quicken Loans to recover punitive damages in an amount to be determined according to the enlightened conscience of the jury, pursuant to O.C.G.A § 51-12-5.1.

## COUNT II – LEGAL MALPRACTICE AGAINST THE DICKASON DEFENDANTS

53.

Quicken Loans re-alleges and incorporates paragraphs 1 through 52 of its Complaint as if fully set forth herein.

54.

The Dickason Defendants acted as attorneys for Quicken Loans in connection with the Closing.

55.

The Dickason Defendants failed to act in accordance with the standard of care for attorneys serving as real estate closing attorneys, by, among other things, the following:

(a)     commingling personal funds with client funds held in a fiduciary capacity;

(b)     failing to maintain sufficient records relating to trust accounts containing Quicken Loans' funds that would permit the Dickason Defendants to account for those funds;

(c)     failing to sufficiently supervise lawyers and non-lawyers acting on their behalf so that the actions of the persons being supervised were consistent with the Dickason Defendants' duties to Quicken Loans;

(d)     failing to account for client funds entrusted to them;

(e)     failing to disclose to Quicken Loans that their agency agreement with NATIC had been terminated prior to the Closing;

(f)     failing to provide Quicken Loans with the Investors Title Commitment or the Investors Title CPL prior to the Closing;

(g)     failing to pay Investors Title the premiums owed for the Investors Title Owner's Policy and the Investors Title Lender's Policy;

(h)     engaging in conduct that exhibits dishonesty, fraud, and deceit; and

(i)     failing to follow Quicken Loans' instructions in connection with the Closing.

56.

As a result of the professional negligence of the Dickason Defendants as set forth above, Quicken Loans has suffered losses, costs, injuries, and damages in an amount to be determined at trial but which amount is not less than $136,093.74, plus interest as allowed by law.

57.

The Dickason Defendants are liable for Quicken Loans' losses arising from their professional negligence.

58.

The Dickason Defendants acted with reckless disregard for the consequences of their acts and omissions with regard to the Closing.

59.

The Dickason Defendants have failed without legal excuse to pay Quicken Loans the amounts owed as a result of their reckless and negligent acts and omissions.

60.

The acts and omissions of the Dickason Defendants as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

61.

The acts and omissions of the Dickason Defendants demonstrate a reckless disregard for the consequences and entitle Quicken Loans to recover punitive damages in an amount to be determined according to the enlightened conscience of the jury, pursuant to O.C.G.A § 51-12-5.1.

## **COUNT III – FRAUD AGAINST THE DICKASON DEFENDANTS**

62.

Quicken Loans re-alleges and incorporates paragraphs 1 through 61 of its Complaint as if fully set forth herein.

63.

As attorneys for Quicken Loans in connection with the Closing, the Dickason Defendants were  required to disclose to Quicken Loans that the Dickason Firm's agency relationship with NATIC terminated prior to the Closing of the Loan, but failed to do so.

64.

The Dickason Defendants' failure to disclose to Quicken Loans that NATIC terminated the agency relationship constitutes a material misrepresentation and/or fraudulent concealment of fact.

65.

Quicken Loans reasonably relied on the Dickason Defendants' misrepresentations and/or failures to disclose regarding the validity and enforceability of the NATIC Commitment and the NATIC CPL when it proceeded with disbursing the Loan Proceeds to the Dickason Firm trust account.

66.

As a result of Quicken Loans' reliance on the truth of the facts that were fraudulently misrepresented and/or concealed by the Dickason Defendants, Quicken Loans has suffered losses, costs, injuries, and damages in an amount to be proved at trial, but which amount is not less than $136,093.74, plus interest as allowed by law.

67.

The Dickason Defendants' misrepresentations and/or concealment were intentional, wanton, willful, malicious, fraudulent, and/or demonstrate a reckless disregard for the consequences entitling Quicken Loans to recover punitive damages from the Dickason Defendants in an amount to be determined by the jury in this case pursuant to O.C.G.A. § 51-12-5.1.

68.

The Dickason Defendants' acts and omissions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## <u>COUNT IV – CONVERSION AGAINST THE DICKASON DEFENDANTS</u>

69.

Quicken Loans re-alleges and incorporates paragraphs 1 through 68 of its Complaint as if fully set forth herein.

70.

Quicken Loans forwarded the Loan Proceeds to the Dickason Firm's trust account based on Quicken Loans' understanding that Dickason would close the Loan, wire the Payoff Funds to Quicken Loans as set forth in the Settlement Statement, and pay the premiums due for a Lenders' Title Policy and an Owner's Title Policy.

71.

The Dickason Defendants failed to wire the Payoff Funds to Quicken Loans after the Loan closed, instead retaining the Payoff Funds and transferring them to another of Dickason's accounts. Further, upon information and belief, the Dickason Defendants failed to pay the premiums due to Investors Title Lender's and Owner's Title Policies.

72.

Quicken Loans made demand for the Payoff Funds from the Dickason Defendants, but the Dickason Defendants failed to remit the Payoff Funds to Quicken Loans.  Accordingly, the Dickason Defendants, without authorization from Quicken Loans, has assumed ownership over the Payoff Funds.

73.

The Payoff Funds are a specifically identifiable fund that has been converted to Dickason's and/or the Dickason Firm's own use and purpose.

74.

The Payoff Funds belong to Quicken Loans and the Dickason Defendants' exercise of dominion over the same is lacking in good faith or justification.

75.

As a result of the Dickason Defendants' conversion of the Payoff Funds, Quicken Loans has suffered losses, costs, injuries and damages in an amount to be proven at trial, but which amount is not less than $136,093.74, plus interest as allowed by law.

76.

The Dickason Defendants' act in converting the Payoff Funds were intentional, wanton, willful, malicious, fraudulent, and/or demonstrate a reckless disregard for the consequences entitling Quicken Loans to recover punitive damages from the Dickason Defendants in an amount to be determined by the jury in this case pursuant to O.C.G.A. § 51-12-5.1.

77.

The Dickason Defendants' acts and omissions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT V – BREACH OF FIDUCIARY DUTY AGAINST THE DICKASON DEFENDANTS

78.

Quicken Loans re-alleges and incorporates paragraphs 1 through 77 of its Complaint as if fully set forth herein.

79.

The Dickason Defendants acted as the closing attorney in connection with the Closing of the Loan.

80.

As closing attorney, the Dickason Defendants acted in a fiduciary capacity for Quicken Loans and owed Quicken Loans a fiduciary duty to properly close the Loan, to disburse the Payoff Funds to Quicken Loans, and to pay for and obtain the required Owner's Title Insurance and Lender's Title Insurance Policies.

81.

The Dickason Defendants breached their fiduciary duty to Quicken Loans by retaining the Payoff Funds instead of applying them in accordance with the disbursement instructions contained in the Settlement Statement and the Closing/Disbursement Instructions, and by failing to pay the premiums for the required Lenders' Title Insurance and Owner's Title Insurance Policies.

82.

As a result of the breach of fiduciary duties by the Dickason Defendants, Quicken Loans has suffered losses, costs, injuries and damages in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law.

83.

The Dickason Defendants' acts and omissions as set forth above are intentional, wanton, willful, malicious, fraudulent, and/or demonstrate a reckless disregard for the consequences entitling Quicken Loans to recover punitive damages from the Dickason Defendants in an amount to be determined by the jury in this case pursuant to O.C.G.A. § 51-12-5.1.

84.

The Dickason Defendants' acts and omissions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT VI – UNJUST ENRICHMENT AGAINST THE DICKASON DEFENDANTS

85.

Quicken Loans re-alleges and incorporates paragraphs 1 through 84 of its Complaint as if fully set forth herein.

86.

On or about April 22, 2019, Quicken Loans conferred a benefit on the Dickason Defendants by retaining their services related to the Closing of the Loan, and by entrusting them with the management and disbursement of the Loan Proceeds for the Loan.

87.

The Dickason Defendants have been unjustly enriched as a result of their misappropriating the Payoff Funds and other sums from the Loan Proceeds.

88.

The Dickason Defendants misappropriated Payoff Funds and other sums from the Loan Proceeds for their own use which should have been applied to satisfaction of the Sellers' debt with Quicken Loans, and satisfaction of the associated lien on the Property, and the payment of the premiums for the Owner's and Lender's Title Insurance Policies.  These circumstances make it inequitable for the Dickason Defendants to retain the benefit of the Loan Proceeds they misappropriated.

89.

As a result of the Dickason Defendants' unjust enrichment through the retention of the Payoff Funds and other sums from the Loan Proceeds, Quicken Loans has been damaged in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law.

90.

The Dickason Defendants' acts and omissions as set forth above are intentional, wanton, willful, malicious, fraudulent, and/or demonstrate a reckless disregard for the consequences entitling Quicken Loans to recover punitive damages from the Dickason Defendants in an amount to be determined by the jury in this case pursuant to O.C.G.A. § 51-12-5.1.

91.

The Dickason Defendants' acts and omissions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT VII – RESPONDENT SUPERIOR AGAINST THE DICKASON FIRM

92.

Quicken Loans re-alleges and incorporates paragraphs 1 through 91 of its Complaint as if fully set forth herein.

93.

The acts and omissions of Dickason set forth herein were all committed in the course of his employment and/or agency for the Dickason Firm.

94.

As a result, the Dickason Firm is responsible for the losses, costs, injuries and damages Quicken Loans has suffered as a result of the above acts and omissions.

95.

Quicken Loans is entitled to recover damages from the Dickason Firm in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law.

96.

Quicken Loans has made demand on the Dickason Firm for payment of the losses Quicken Loans has suffered. That demand is hereby restated.

97.

The Dickason Firm has failed and refused to pay the losses Quicken Loans has suffered without legal excuse.

98.

The acts and omissions of the Dickason Firm as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

## COUNT VIII – BREACH OF THE NATIC CPL AGAINST NATIC

99.

Quicken Loans re-alleges and incorporates paragraphs 1 through 98 of its Complaint as if fully set forth herein.

100.

Pursuant to the NATIC CPL, NATIC was obligated to indemnify Quicken Loans against losses as a result of the wrongful acts and omissions of Dickason, the Dickason Firm and their agents committed in connection with the Closing of the Loan.

101.

Quicken Loans has suffered a loss of not less than $136,093.74, plus interest, as a result of the wrongful acts and omissions of Dickason, the Dickason Firm and their agents.

102.

Quicken Loans has notified NATIC of its loss and has made demand for payment of that loss pursuant to the terms of the NATIC CPL.

103.

NATIC has failed and refused to indemnify Quicken Loans for its loss without legal excuse.

104.

NATIC's acts and omissions as set forth above demonstrate bad faith, constitute stubbornly litigious conduct, and/or have caused Quicken Loans unnecessary trouble and expense, entitling Quicken Loans to recover its costs and expenses of this action, including reasonable attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

**JURY DEMAND**

105.

Quicken Loans hereby demands a trial by jury on all claims set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Quicken Loans Inc. respectfully prays for relief from this Court as follows:

(a)     That process and summons be issued as provided by law, requiring the Dickason Defendants and NATIC to appear and answer Quicken Loans' Complaint;

(b)     Enter judgment against Dickason under Counts Two through Six, and award damages in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law;

(c)     Enter judgment against the Dickason Firm under Counts One through Seven and award damages in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law;

(d)     Award Quicken Loans its costs and expenses of this litigation, including reasonable attorneys' fees, against the Dickason Defendants and NATIC pursuant to O.C.G.A. § 13-6-11;

(e)     Award Quicken Loans punitive damages against the Dickason Defendants, in an amount to be determined according to the enlightened conscience of the jury pursuant to O.C.G.A. § 51-12-5.1;

(f)     Enter judgment against the NATIC under Count Eight and award damages in an amount to be determined at trial, but which amount is not less than $136,093.74, plus interest as allowed by law;

(g)     That all costs of this action be cast upon the Dickason Defendants and NATIC; and

(h)     All such other and further relief as the Court deems just and proper.

Respectfully submitted, this 4th day of September, 2019.

**McGLINCHEY STAFFORD, PLLC**

/s/ Gabriel M. Hartsell
Gabriel M. Hartsell, Esq.
Georgia Bar No. 643651
10407 Centurion Pkwy N, Ste. 200
Jacksonville FL 32256
Telephone:  (904) 224-4449
Facsimile:  (904) 212-1784
ghartsell@mcglinchey.com
jshurling@mcglinchey.com

**Attorneys for Quicken Loans Inc.**